**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**February 1, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1031-CR**

Cir. Ct. No. **2013CF5055**

STATE OF WISCONSIN

**IN COURT OF APPEALS**
**DISTRICT I**

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

LANARIUS TRAVELL HODGES,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and orders of the circuit court for Milwaukee County: DENNIS P. MORONEY and GLENN H. YAMAHIRO, Judges. *Affirmed*.

Before Brash, C.J., Donald, P.J., and Dugan, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. Lanarius T. Hodges appeals a judgment of conviction entered after a jury trial.[1]  He also appeals an order denying his postconviction motion and an order denying his motion for reconsideration. Hodges contends that he is entitled to a new trial or an evidentiary hearing based on newly discovered evidence and ineffective assistance of counsel.  As discussed below, we reject Hodges's arguments and affirm.

## BACKGROUND

¶2    Hodges was convicted after a jury trial of possession of a firearm by a person adjudicated delinquent, first-degree recklessly endangering safety with the use of a dangerous weapon, and discharging a firearm into a building endangering safety.  The convictions all stemmed from a daytime shooting that took place in the Village of West Milwaukee.

¶3    According to the criminal complaint, on May 1, 2013, Hodges drove Christopher Moss and Robert Fisher in a red Monte Carlo to an apartment building, located at 3830 West Greenfield Avenue, to collect on a ten-dollar drug debt from Roberto Quiles Jr.  On one side of the 3830 building was another apartment building located at 3904 West Greenfield Avenue.  On the other side of the 3830 building was a parking lot, which was adjacent to the New Elbow Tavern, located at 3812 West Greenfield Avenue.

---

[1] The Honorable Dennis P. Moroney presided over the jury trial.  The Honorable Glenn H. Yamahiro issued the order denying the postconviction motion and the motion for reconsideration.  We refer to Judge Moroney as the trial court and Judge Yamahiro as the postconviction court.

¶4    In the parking lot between the 3830 building and the New Elbow Tavern, Moss got into an argument with Quiles Jr.  According to one witness, gunfire was exchanged between two unidentified individuals and the driver of the red Monte Carlo, who was alleged to be Hodges.  After the shooting, police observed bullet damage to a car in the parking lot.  G.V., a resident of the 3904 building, stated that he heard gunshots and then saw a bullet hole and a bullet fragment inside his apartment.

¶5    During Hodges's trial, the jury was shown video surveillance footage from the New Elbow Tavern.  The footage, which was recorded in broad daylight and is in color, shows a red Monte Carlo pulling up to the side of the street.  Moss, wearing a white t-shirt, exits the passenger side of the car and meets up with Quiles Jr. and Roberto Quiles Sr. in the parking lot.  Subsequently, the driver, alleged to be Hodges, reverses the Monte Carlo, gets out of the car, fires multiple shots in the direction of the parking lot and the 3830 and 3904 buildings, and then runs away.  Moss, who appears to be injured, drives the car away.  The State argued that the video footage clearly shows that the person who exited from the driver's side of the red Monte Carlo and fired multiple shots was Hodges.

¶6    At trial, in addition to the video, the State presented circumstantial evidence linking Hodges to the shooting.  An eyewitness wrote down the license plate of the red Monte Carlo, which the police traced to the owner, Telena Carter.  Carter told police that Hodges was her boyfriend and that on May 1, 2013, Hodges drove her Monte Carlo and dropped her off around 4:00 p.m. at a Pick 'N Save, where she works.  Hodges was supposed to pick her up at 10:00 p.m. that evening, but he never showed up.

¶7      The following day, Carter called the police and said that she came home and found a note from Hodges advising her as to the location of the Monte Carlo. Police located and took custody of the vehicle to process it for evidence. A print of Hodges's right palm was found on the exterior of the vehicle.

¶8      Subsequently, on July 3, 2013, police stopped the same Monte Carlo, which had been painted gold. At the time the police stopped the car, there were four occupants in the car, including Hodges, who was driving. A gun was found under the passenger seat.[2]

¶9      Police obtained the phone records corresponding to Hodges's cell phone number. Sergeant Brian Murphy testified that cell tower information was consistent with Hodges's phone being in the area of Pick 'N Save around 4:00 p.m. and in the area of the shooting around 6:00 p.m.[3]

¶10     After the trial, Hodges was sentenced to a total of thirteen years of initial confinement and eleven years of extended supervision.

### *Postconviction Proceedings*

¶11     Hodges filed a postconviction motion seeking a new trial based on newly discovered evidence and ineffective assistance of counsel.[4] In support of

---

[2] Based on the discovery of the firearm in the Monte Carlo on July 3, 2013, Hodges was charged with possession of a firearm by a person adjudicated delinquent. The jury returned a not guilty verdict on this charge.

[3] At trial, the State also attempted to prove that Hodges conspired to commit perjury by playing recordings of calls made while Hodges was incarcerated; however, due to technical issues, the State moved to dismiss the perjury charges, which the court granted.

[4] The postconviction motion also sought a new trial in the interest of justice and challenged the use of the pattern jury instruction, WIS JI-CRIMINAL 140. These challenges are not renewed on appeal.

his motion, Hodges filed a statement from an alleged alibi witness, Raquel Hollingsworth. Hollingsworth stated that she is the hairstylist for Deidrah Jones, the mother of Hodges's children. Hollingsworth averred that on May 1, 2013, at 6:00 p.m., she was at Jones's house located at 35th and Greenfield. Hollingsworth recalled Jones going down the stairs to open the door for Hodges, who was wearing jeans, a red t-shirt with a Nike logo, and red shoes. According to Hollingsworth, Hodges "was not there too long before his ride came back blowing the horn. Th[e]n [h]e kissed his kids and left[.]"

¶12 Hodges also attached statements from three purported eyewitnesses, Joshua Buford, Ronald Griffin, and Will Velez, who all alleged that Hodges was not the driver/shooter.

¶13 The first alleged eyewitness, Joshua Buford, stated that he had received a letter at Columbia Correctional Institution from Hodges, who was incarcerated at the New Lisbon Correctional Institution. The letter stated that Hodges was "looking for [Buford] to help clear [Hodges's] name regarding the shooting that took place on 38th and [G]reenfield." Buford asserted that he was present during the shooting. According to Buford, Hodges was not the person driving the red Monte Carlo. Hodges argued that Buford's statements were reliable based on a police report in which Buford told the sergeant that he had seen the driver/shooter, but did not recognize him.[5]

---

[5] In addition, Hodges filed a report by a defense investigator who interviewed Buford. The report noted that Buford described the driver of the red car as an "older guy, middle-aged" with "long hair that looked like dreads or braids."

¶14    The second alleged eyewitness, Ronald Griffin, an inmate at the New Lisbon Correctional Institution, averred that he was at 38th and Greenfield on the date of the shooting and saw Quiles Jr. and Quiles Sr. speaking to the passenger of the red car.  Griffin recognized the driver of the red car as his weed supplier "Julien."  When Griffin saw two males approach from an alley, he ran.  As he ran, he heard shots being fired.  About five minutes later, Griffin saw "Julien" jog by with a gun.  Griffin stated that he learned that Hodges was in prison for this shooting after meeting him in the prison law library.

¶15    The third alleged eyewitness, Will Velez, who is related to Quiles Jr. and Quiles Sr., stated that he was present during the shooting.  Velez averred that he got a "real good look" at the driver of the red Monte Carlo car and was positive it was not Hodges.  Velez stated that he had known Hodges for over ten years. Velez explained that he did not stay at the scene of the shooting because he did not want to be harassed by the police.  Velez stated that he spoke to private investigators, as well as lawyers on behalf of Hodges, and he was told that he would be on the witness list to testify.  Velez stated that he went to Hodges's trial to testify, but Hodges's lawyer did not let anyone testify.  Hodges noted that Velez was identified in the police reports and listed on the defense's witness list.[6]

¶16    After ordering briefing, the postconviction court denied the motion without an evidentiary hearing.  The court stated that the video in conjunction with the other circumstantial evidence tying the defendant to the shooting rendered the statements submitted by Hodges "of little consequence."  The court concluded that

---

[6] The defense's witness list was filed by Hodges's first attorney.  Hodges's second attorney, who represented Hodges at trial, stated on the record that he was "satisfied" with that list.

"[t]aking the statements of Buford, [Griffin], Hollingsworth, and Velez at face value, there is not a reasonable probability that a jury viewing the evidence adduced at trial and the 'new' evidence would have … acquit[ted] Hodges." In addition, the court concluded that Hodges was not prejudiced by counsel's failure to pursue the alleged witnesses.

¶17 Subsequently, Hodges filed a motion for reconsideration. Hodges's arguments included that the postconviction decision erroneously stated that there were only two people in the Monte Carlo when in fact there were three people; that the statements from the three alleged eyewitnesses would refute that Hodges was present at the scene of the shooting; and that the cell phone evidence only showed Hodges's phone's proximity to a cell tower and its location in a pie-shaped area at least one-mile long.

¶18 In an affidavit filed with the motion for reconsideration, Hodges admitted that on May 1, 2013, he received permission to use Carter's red Monte Carlo. After dropping Carter off at work, Hodges picked up Moss, Fisher, and a friend of Fisher's. Around 5:30 or 6:00 p.m., he arrived at his children's house. Moss asked Hodges to use the car to go down the street. Hodges agreed to let Moss, Fisher, and Fisher's friend use the car, but told them to hurry back. Ten to twenty-five minutes later, Moss and Fisher returned blowing the horn repeatedly. Moss was bleeding from his face saying that "he thinks he's been shot." Hodges switched spots with Moss and drove to the hospital. Hodges further alleged that he conveyed the above information to his trial attorney and asked him to pursue an alibi defense.

¶19 After additional briefing, the postconviction court denied the motion for reconsideration. The court indicated that its misstatement regarding the

7

number of people in the red Monte Carlo was "of absolutely no consequence to the outcome because no one has argued then or now that the defendant was the third individual in the car." The court reiterated that Hodges's proffered affidavits would not have created a reasonable probability of a different result. The court also stated it "agrees with the State that this would have been 'an absurd defense, certainly one that no reasonable jury would believe.'"

¶20 Hodges filed a notice of appeal from the order denying his postconviction motion and the order denying his motion for reconsideration. Additional relevant facts are referenced below.

## DISCUSSION

### I. Newly Discovered Evidence

¶21 On appeal, Hodges argues that the statements from Buford, Griffin, and Hollingsworth constitute newly discovered evidence. We disagree.

¶22 To vacate a judgment based on newly discovered evidence, the defendant must provide sufficient evidence to establish that his or her conviction is a manifest injustice. *State v. McAlister*, 2018 WI 34, ¶31, 380 Wis. 2d 684, 911 N.W.2d 77. To obtain an evidentiary hearing, a defendant must show:

> specific facts that are sufficient by clear and convincing proof, when considered in the context of the record as a whole, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.

*Id.*

¶23 If a defendant satisfies his burden on all four of these elements, the circuit court must then determine whether a reasonable probability exists that a different result would be reached at trial. *State v. Avery*, 2013 WI 13, ¶25, 345 Wis. 2d 407, 826 N.W.2d 60. "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Id.*

¶24 When a defendant moves for a new trial on the basis of newly discovered evidence, the circuit court must hold an evidentiary hearing only if "the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Love*, 2005 WI 116, ¶26, 284 Wis. 2d 111, 700 N.W.2d 62 (citation omitted). This is a question of law we review *de novo* "based on the specific factual allegations made and the record as a whole." *McAlister*, 380 Wis. 2d 684, ¶25. "However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.

¶25 To start, the statements from Buford do not satisfy the requirements for newly discovered evidence. As Hodges observes, Buford was identified as an eyewitness in the discovery. Additionally, Hodges argues that he specifically asked trial counsel to investigate Buford. To constitute newly discovered evidence, the evidence must have come to the attention of the parties *after* the conviction. *See McAlister*, 380 Wis. 2d 684, ¶31. Thus, the statements from Buford cannot be considered newly discovered evidence.

¶26 Likewise, Hollingsworth's statements are not newly discovered evidence. Hollingsworth alleges that she was with Hodges at Jones's house at the time of the shooting. If this is true, then Hodges would have known about Hollingsworth prior to trial. Thus, Hollingsworth's statements cannot be considered newly discovered evidence either. *See **id.***

¶27 In regards to Griffin's statements, even if we assume that they constitute newly discovered evidence, we agree with the postconviction court that there is not a reasonable probability that a jury looking at both the old evidence and the new evidence would have a reasonable doubt as to Hodges's guilt.[7] *See Avery*, 345 Wis. 2d 407, ¶25.

¶28 As the State observes, Griffin admits that he did not actually witness the shooting. Griffin ran away before the shooting happened. Moreover, we agree with the postconviction court that the evidence presented at trial was "overwhelming." The evidence included a color video that showed footage of the driver of the red Monte Carlo exiting the car and firing multiple shots in broad daylight.

¶29 The State also presented other evidence linking Hodges to the shooting. An eyewitness to the shooting wrote down the license plate of the red Monte Carlo, which the police traced to the owner, Telena Carter. Carter, who

---

[7] On appeal, Hodges contends that the postconviction court used an erroneous legal standard and made several factual errors in its decision. These arguments, however, were presented in Hodges's motion for reconsideration. The postconviction court reviewed the motion for reconsideration and again found that there was not a reasonable probability of a different result. Moreover, as discussed below, we agree with the postconviction court's conclusion that there is not a reasonable probability that a jury looking at both the old evidence and the new evidence would have a reasonable doubt as to Hodges's guilt.

said that Hodges was her boyfriend, told police that Hodges drove her Monte Carlo on May 1, 2013. The following day after speaking to police, Carter stated that she came home and found a note from Hodges advising her as to the location of the Monte Carlo. Police located the vehicle and found a print of Hodges's right palm on the exterior of the vehicle. Moreover, approximately two months after the shooting, the same Monte Carlo was stopped and Hodges was driving. Notably, at the time of the stop, the Monte Carlo had been painted gold, reflecting consciousness of guilt.

¶30   In addition, police also obtained the phone records corresponding to Hodges's cell phone number and the cell tower information was consistent with Hodges being in the area of the shooting at the time of the shooting. Thus, we agree with the postconviction court that there is not a reasonable probability that a jury looking at both the old evidence and the new evidence would have a reasonable doubt as to Hodges's guilt. *Id.* Accordingly, the postconviction court properly denied Hodges's newly discovered evidence claim without a hearing.

## II.   Ineffective Assistance of Counsel

¶31   Hodges next contends that trial counsel was ineffective for failing to investigate and call Hollingsworth, Griffin, Velez, and Buford. Again, we disagree.

¶32   To prevail on a claim of ineffective assistance of counsel, the defendant must prove both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish prejudice, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

11

probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If the court concludes that the defendant has not proven one prong of this test, it need not address the other. *Id.* at 697.

¶33 As with a newly discovered evidence claim, a circuit court is required to hold an evidentiary hearing on an ineffective assistance of counsel claim only if the defendant has alleged "sufficient material facts that, if true, would entitle the defendant to relief." *Allen*, 274 Wis. 2d 568, ¶14. Whether a defendant's motion has alleged sufficient material facts entitling the defendant to relief is a question of law that we review *de novo*. *Id.*, ¶9. If the postconviction motion "does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." *Id.*

¶34 Here, the postconviction court properly denied Hodges's ineffective assistance of counsel claims without an evidentiary hearing. First, Hodges failed to explain in his postconviction motion or his motion for reconsideration how trial counsel would have known about Griffin or Hollingsworth. *See id.*, ¶23 (stating that a defendant must allege the "five 'w's' and one 'h'; that is, who, what, where, when, why, and how" within the four corners of a postconviction motion). Hodges did not allege that trial counsel should have known about Griffin or Hollingsworth because they were identified in the police reports. Nor did Hodges specifically allege that he told trial counsel about Griffin or Hollingsworth. In his postconviction motion, Hodges simply stated that he told trial counsel about "his alibi witnesses and other potential identification witnesses[.]" Hodges did not provide the names of the witnesses. *See id.* A lawyer cannot be ineffective for

failing to pursue something that the defendant knew, but did not reveal. *See State v. Eison*, 2011 WI App 52, ¶21, 332 Wis. 2d 331, 797 N.W.2d 890.

¶35 Second, in regards to Buford and Velez, even if we assume that trial counsel performed deficiently, Hodges has failed to establish that he was prejudiced. As discussed in detail above, given the color video of the shooting, the evidence connecting Hodges to the Monte Carlo, and the cell tower evidence, trial counsel's failure to call Buford and Velez was not sufficient to undermine confidence in the outcome of the trial. *See Strickland*, 466 U.S. at 694.

¶36 Finally, Hodges argues that trial counsel was ineffective for failing to impeach or rebut testimony from Sergeant Murphy that Hodges's right palm print was found on the driver's side back window of the Monte Carlo rather than the passenger's side.

¶37 As the State argues, however, the significance of the palm print was that it connected Hodges to the red Monte Carlo; the location of the print was inconsequential. In closing, the prosecutor argued:

> [Sergeant Murphy] obtains the right palm print of the defendant on the outside of the back window. That is where the defendant was during this video. *I don't know if the palm print was placed then, before, after, but it's on that vehicle and that is strong circumstantial evidence to not only support the video, but stands alone as connecting him to the vehicle in addition, in this case.*

(Emphasis added). Thus, even if trial counsel was deficient in this respect, Hodges has failed to establish prejudice. The location of the print was inconsequential in the context of the overwhelming case that the State built against Hodges.

¶38    Therefore, we conclude that the postconviction court properly denied Hodges's postconviction motion and motion for reconsideration without an evidentiary hearing.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).